IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AARON BROWN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE MITRE CORPORATION, THE BOARD OF TRUSTEES OF THE MITRE CORPORATION, THE INVESTMENT ADVISORY COMMITTEE OF THE MITRE CORPORATION and JOHN DOES 1-30,<br><br>Defendants. | Case No. 1:21-cv-11605-RGS |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**I.     INTRODUCTION**

Defendants presented factual evidence in their Motion that Plaintiff invested in a single investment fund, the TIAA-CREF 2045-Institutional Fund—which *was* the cheapest share class and did not pay any revenue sharing. Plaintiff's Opposition presents no evidence to the contrary. Instead, Plaintiff's Opposition confirms that he is dropping his fiduciary breach claim premised on more expensive share classes altogether, and focusing only on a single aspect of the Plans' purported excessive fees. Plaintiff now says his *only* claim is that the Plans charged excessive recordkeeping fees through a process called "revenue sharing." But Plaintiff has not carried *his* burden under Article III of the U.S. Constitution to show that he was personally injured by revenue sharing because the TIAA-CREF 2045-Institutional Fund – the only fund in which he invested – did not pay *any* revenue sharing. Mem. at 6. Plaintiff does not claim otherwise. Necessarily, based on Plaintiff's own theory as clarified in the Opposition, that means Plaintiff paid *zero dollars* in recordkeeping fees.[1] As a result, Plaintiff has not satisfied his burden to show that he suffered a personal and concrete injury-in-fact sufficient to confer Article III standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). No jurisdiction over his claim exists.

Although Plaintiff tries to sidestep this fatal deficiency by claiming the Plans' "overall" recordkeeping fees were excessive, he cannot avoid *his own* Article III burden to show a *personal* injury-in-fact by pointing to what the Plans as a whole may have paid. *Thole v. U.S. Bank, N.A.,* 140 S. Ct. 1615, 1619-22 (2020) (plaintiffs whose benefits were not personally injured by alleged fiduciary breaches lacked Article III standing to sue on behalf of an ERISA plan: "But in order to claim the interests of [the plan], the litigants themselves still must have suffered an injury in fact, thus giving them a sufficiently concrete interest in the outcome of the issue in dispute") (quotations

---

[1] In the Complaint, Plaintiff alleged that the Plans paid recordkeeping fees of 0.10% to 0.039% of assets. Compl. ¶ 59. He never alleged the amount of recordkeeping fees that he allegedly paid, or that he paid recordkeeping fees at all. *See generally id*. Plaintiff clarified in his Opposition that he is *not* alleging that this asset-based fee was charged to each participant, or that he personally paid that amount. He is merely alleging that the Plans paid that amount on average. Opp. at 1. That bare allegation, however, is insufficient to confer Article III standing to *this* Plaintiff.

1

and citations omitted); *Spokeo*, *Inc. v. Robins*, 578 U.S. 330, 339 n.6 (2016). Plaintiff lacks Article III standing and dismissal is appropriate under Fed. R. Civ. P. 12(b)(1).

## II. ARGUMENT

### A. Plaintiff Lacks Article III Standing To Press His Recordkeeping Fee Claim.

#### 1. Plaintiff Fails To Present Evidence Rebutting Defendants' Factual Challenge To Article III Standing, And Instead Merely Relies On His Complaint Allegations.

Standing is a threshold question in every case; without it, a party cannot invoke the court's "jurisdiction to decide the merits of the underlying case." *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992). "[T]o have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. *No concrete harm, no standing*." *Ramirez*, 141 S. Ct. at 2190 (emphasis added). The injury "must affect the plaintiff in a personal and individual way." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 & n. 1 (1992).

Plaintiff concedes (rightly) that he bears the burden to establish a "concrete and particularized" injury-in-fact. Opp. at 5; *see also Lujan*, 504 U.S. at 561 (burden rests with the party invoking federal jurisdiction); *Massachusetts v. U.S. Dep't of Health & Hum. Servs.*, 923 F.3d 209, 221 (1st Cir. 2019) (same). But Plaintiff misstates the Article III test governing Defendants' 12(b)(1) motion, contending that the Court must accept his allegations as true and draw all reasonable inferences in his favor. Opp. at 5. That is the test for a *facial* challenge. Where, as here, Defendants mounted a *factual* challenge to Plaintiff's standing, he cannot rest on allegations in the Complaint. *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001) ("[P]laintiff's jurisdictional averments are entitled to no presumptive weight [in a factual challenge]; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties").

Plaintiff does not even attempt to do that here. He does not refute the evidence Defendants introduced in their Motion, namely that: (1) Plaintiff invested in only a single investment fund during the putative class period, the TIAA-CREF Lifecycle 2045-Institutional Fund; (2) the TIAA-

2

CREF Lifecycle 2045-Institutional *is* the least expensive "share class"; and (3) the TIAA-CREF Lifecycle 2045-Institutional Fund does not pay any revenue sharing to cover the costs of the Plans' recordkeeping fees. Mem. at 6.

Although Plaintiff tries to sidestep this fact, he does not offer any evidence to contradict it. He offers no allegations, let alone evidence, that he personally paid *any* recordkeeping fees. That does not satisfy his burden of proof. *Lange v. Infinity Healthcare Phys.*, *S.C*., 2021 WL 3022117, at *3-4 (W.D. Wis. July 16, 2021) (plaintiff "must do more than rely on the allegations in her complaint to survive a factual challenge to her standing [] regarding recordkeeping fees").

> **2. Plaintiff Cannot Satisfy His Burden Because He Does Not Present Evidence That He Personally Paid Allegedly Excessive Recordkeeping Fees – Or Any Recordkeeping Fees At All.**

Faced with undisputed evidence showing that Plaintiff invested in a single fund that was in the lowest share class available, Plaintiff pivots. He says that he is not asserting an independent challenge to the Plans' alleged use of "higher-cost share classes." Opp. at 1. His *only* claim, rather, is that the "Plan fiduciaries overpaid for recordkeeping and administration (RK&A) costs." *Id*. His allegations "regarding failure to select lower cost share classes of investment funds" are not a separate claim, but only relevant because: "[t]he Plans utilized revenue sharing to pay for over-priced RKA services." Opp. at 8. Plaintiff's new theory is still insufficient to create Article III standing or otherwise satisfy his burden of proof.

*First*, Plaintiff's claim that the Plans' participants paid excessive recordkeeping fees through "revenue sharing" means that *only participants who paid "revenue sharing" could possibly have been injured*. And revenue sharing varies depending on the investment(s) selected: some investments pay revenue sharing through higher cost share classes and others do not.[2] The

---

[2] *E.g., Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 909 (7th Cir. 2013) ("expense ratios and revenue-sharing payments move in tandem: the higher a given share class's expense ratio, the more the fund pays" in revenue sharing); *Ruppert v. Principal Life Ins. Co.*, 252 F.R.D. 488, 499 (S.D. Iowa 2008) ("the amount of the revenue sharing fee varies depending on the fund company").

Complaint rightly acknowledges this fact.[3] But Plaintiff does not allege the only fund in which he was invested – the TIAA-CREF 2045-Institutional Fund – paid any revenue sharing, *and the undisputed fact is that it did not*. Mem. at 6. That means Plaintiff paid none of the recordkeeping fees that he challenges.[4] He suffered no "concrete and particularized" injury that is personal to him, and this Court should dismiss his claims for lack of Article III standing as did another court recently:

> ***The Infinity fiduciaries have adduced evidence that Vanguard 2045 fund participants did not pay any recordkeeping fees to Great-West. Again, Lange must provide competent proof that she did pay such fees to survive a motion to dismiss these claims*** . . . she has failed to meet her burden in response to [the] factual challenge to this court's jurisdiction, so the court must dismiss these claims.

*Lange v. Infinity Healthcare Phys., S.C.*, 2021 WL 3022117, at *4 (W.D. Wis. July 16, 2021); *see also Perkins v. United Surgical Partners Int'l Inc.*, 2022 WL 824839, at *4 (N.D. Tex. Mar. 18, 2022) ("[t]he plaintiffs make no allegations that the revenue sharing fees are charged to all participants, regardless of which funds the plaintiffs invested in. . . the Court cannot conclude that the plaintiffs have properly alleged an injury from revenue sharing"); *Seidner v. Kimberly-Clark Corp.*, 2022 WL 865890, at *2 (N.D. Tex. Mar. 23, 2022) ("the allegations in plaintiffs' complaint are also insufficient to establish that they have Article III standing to pursue any claim that Defendants breached their fiduciary duties by permitting the Plan's recordkeepers to recoup fees in whole or in part through revenue sharing").

*Second*, Plaintiff says the Court should assume he has standing because the Plans' "overall" recordkeeping fees were purportedly excessive. Opp. at 9. That is wrong. As a legal matter, the

---

[3] *See* Compl. ¶ 56 (revenue sharing is a process through which "payments [are] made by *investments within the plan*, typically mutual funds, to the plan's recordkeeper") (emphasis added); *see also id.* ¶ 70 (alleging Defendants should monitor a plan's fees "to the extent" any investment "pay[s] asset-based revenue sharing").

[4] Plaintiff alleged the Plans' recordkeeping fees were charged as a percentage of the Plans' assets, 0.10% in 2015 to 0.039% in 2020. Compl. ¶¶ 59, 63. Defendants presented evidence from Plaintiff's account statements reflecting that even assuming those facts were true, he paid less than $5 in recordkeeping fees – less than the allegedly "reasonable" amount. Mem. at 6-7. That means Plaintiff personally could not have been injured by paying excessive recordkeeping fees. *Id.*; *see, e.g., Loomis v. Exelon Corp.*, 658 F.3d 667, 672 (7th Cir. 2011). Plaintiff has now clarified he was not alleging each participant paid those asset-based percentages. Opp. at 1. That means there are no factual allegations – and no evidence – that Plaintiff paid *any* recordkeeping fees.

Supreme Court in *Thole* rejected the argument that a plan participant had Article III standing to sue for plan injuries that did not impact that participant personally and concretely. *Thole,* 140 S. Ct. at 1619-22 (plaintiffs whose benefits were not personally injured by alleged fiduciary breaches lacked Article III standing to sue on behalf of an ERISA plan: "But in order to claim the interests of [the plan], the litigants themselves still must have suffered an injury in fact, thus giving them a sufficiently concrete interest in the outcome of the issue in dispute"). "The mere fact that ERISA plan participants purport to sue in a derivative capacity 'on behalf of the plan,' as Plaintiffs allege here, does not absolve their obligation to satisfy Article III's individualized-injury requirement." *Mator v. Wesco Dist., Inc.*, 2021 WL 4523491, at *3 (W.D. Pa. Oct. 4, 2021) (citation omitted).[5]

And as a factual matter, Plaintiff's Opposition confirms the injury he is complaining about did not impact him personally. Opp. at 8. Because he did not personally pay any revenue sharing, Plaintiff is not one of the "participants" who allegedly lost "out of pocket money" that compounded over time and were left with "significantly less for their retirement." *Id*. Plaintiff's argument is reminiscent of the example the Supreme Court discussed in *Ramirez*:

> To appreciate how the Article III "concrete harm" principle operates in practice, consider two different hypothetical plaintiffs. Suppose first that a Maine citizen's land is polluted by a nearby factory. She sues the company, alleging that it violated a federal environmental law and damaged her property. Suppose also that a second plaintiff in Hawaii files a federal lawsuit alleging that the same company in Maine violated that same environmental law by polluting land in Maine. The violation did not personally harm the plaintiff in Hawaii.
>
> ***
>
> Even if Congress affords both hypothetical plaintiffs a cause of action (with statutory damages available) to sue over the defendant's legal violation, Article III standing doctrine sharply distinguishes between those two scenarios. The first lawsuit may of course proceed in federal court because the plaintiff has suffered concrete harm to her property. ***But the second lawsuit may not proceed because that plaintiff has not suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts***. *An uninjured plaintiff who sues in*

---

[5] *See also In re Omnicom ERISA Litig.*, 2021 WL 3292487, at *9 (S.D.N.Y. Aug. 2, 2021) ("An ERISA plan participant lacks standing to sue for ERISA violations that cause injury to a plan but not individualized injury to the plan participant") (citation omitted).

> *those circumstances is, by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's "compliance with regulatory law"* (and, of course, to obtain some money via the statutory damages). ***Those are not grounds for Article III standing***.

141 S. Ct. at 2205-06 (emphasis added) (citations omitted). Plaintiff here is like the Hawaii citizen suing for damage caused to the property of citizens in Maine. He complains about the use of revenue sharing to pay excessive recordkeeping fees, but the undisputed facts reflect that he personally did not pay any revenue sharing towards those excessive recordkeeping fees. Even if ERISA affords a statutory cause of action to all participants, Plaintiff lacks Article III standing because he personally has not suffered any concrete injury-in-fact.[6] *See also Mator, In re Omnicom ERISA Litig.*, *supra.* Another example is helpful. A participant in the Plans who has an account but never invested in a single investment fund and never paid a single dollar in recordkeeping fees may have statutory standing to bring a claim under ERISA, but not constitutional standing. That same is true here. While ERISA may afford Plaintiff a statutory cause of action on behalf of the Plans, his individual account was not personally harmed by the recordkeeping arrangement that he challenges because he never paid *any* revenue sharing, and thus according to his own theory, he also never paid *any* recordkeeping fees. He did not suffer an Article III injury-in-fact. *Supra* at 4.

*Third*, Plaintiff cannot establish *his own* injury-in-fact merely by pointing to "average" fees purportedly paid by all of the Plans' participants. Plaintiff does not allege all participants paid the same recordkeeping fee. He alleges the opposite, recognizing some individuals will pay more than the "average" and some will pay less. This is particularly true given that the amount of recordkeeping fees paid by any particular Plan participant depends on the specific investment(s) selected by that participant and whether those funds pay revenue sharing. *Supra* at 3. Plaintiff cannot establish *his own harm* by pointing to what some unidentified putative class member may have paid. *Ramirez*, 141 S. Ct. at 2208-09; *Spokeo*, 578 U.S. at 338 & n. 6; *Town of Chester v. Lareo Ests., Inc.,* 137 S. Ct. 1645, 1650 (2017) (a plaintiff "must demonstrate standing for each

---

[6] Plaintiff's claim that the amount of actual recordkeeping fees he personally paid – and whether he personally paid any recordkeeping fees at all – are irrelevant to the Article III analysis has no basis in *Thole*, *Ramirez*, or any other Supreme Court jurisprudence, all of which require a personalized and concrete injury in fact *to the plaintiff* to establish Article III standing. *Supra* at 1-6.

claim he seeks to press and for each form of relief that is sought"); *Diaz v. Local No. 241, Transport Workers Union of Am., Univ. Division*, 2021 WL 1063184, at *7 (S.D.N.Y. Mar. 19, 2021) ("merely using averages or statistics to establish an injury-in-fact requirement for standing has been rejected").

*Fourth*, Plaintiff says that he has suffered an injury in fact because "had Defendants managed the Plan prudently, Plaintiffs would have paid less in recordkeeping." Opp. at 6-7. As described herein, that legal argument finds no support in any *facts* before the Court – as required when considering a factual challenge to Article III standing. Plaintiff offers no evidence, and his Complaint contains no allegations, that he paid *any* recordkeeping fees. He has no injury-in-fact.

### B. Plaintiff Must First Demonstrate An Injury-In-Fact To Make Claims On Behalf Of Other Participants.

Plaintiff seeks to distract from his Article III standing deficiency, claiming he has standing under ERISA because *some other* participants in the Plans "suffered an injury." Opp. at 4. Plaintiff conflates constitutional standing with statutory standing, ignoring the prerequisite to bringing any claims on behalf of others is establishing a *personal injury* pursuant to Article III. *Spokeo*, 578 U.S. at 341 (rejecting "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue . . .").[7]

A named plaintiff does not acquire constitutional standing by bringing a class action lawsuit. *Ramirez*, 141 S. Ct. at 2208; *Spokeo,* 578 U.S. at 338. "Article III does not give federal courts the power to order relief to *any uninjured* plaintiff, class action or not." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, J., concurring). The injury-in-fact must be one

---

[7] *See also Ramirez*, 141 S. Ct. at 2208 ("Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . . ."); *Brown v. Medtronic, Inc*., 628 F.3d 451, 457 (8th Cir. 2010) ("It is crucial, however, not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive.") (citation omitted).

7

that "affect[s] the plaintiff in a personal and individual way" that is distinct from a claimed injury to a broad group or class. *Id*. (quoting *Lujan*, 504 U.S. at 560 n.1).[8]

Rather, Plaintiff must *first* show that he himself was harmed by paying excessive recordkeeping fees. He has not done so. *Supra* at 1-6. Only then does a court look to whether the named plaintiff can bring suit on behalf of other Plan participants. *Glass Dimensions,* 285 F.R.D. 174 ("*[O]nce a plaintiff establishes his own standing*, the question of whether a plaintiff will be able to represent a putative class . . . ."). Plaintiff's authority recognizes as such. *See, e.g.*, *Boley v. Univ. Health Serv., Inc.*, 498 F. Supp.3d 715 (E.D. Pa. 2020) ("*Once an ERISA plaintiff has alleged injury to her own account*, she 'may seek relief under § 1132(a)(2) that sweeps beyond [her] own injury.'") (emphasis added); *In re Biogen, Inc. ERISA Litig.*, 2021 WL 3116331, at *3 (D. Mass. July 22, 2021) ("A named plaintiff in a putative class action has class standing if he alleges *personal injury* caused by the defendant . . .") (emphasis added).

Plaintiff also argues that the Supreme Court's decision in *Thole v. U.S. Bank N.A.* does not preclude his claim because *Thole* involved a defined-benefit plan rather than a defined-contribution plan. Opp. at 13. But the Supreme Court made clear in *Thole* that "there is no ERISA exception to Article III." 140 S. Ct. at 1622. The type of ERISA plan at issue has no bearing on the Supreme Court's basic requirement that the named plaintiff must suffer harm with respect to each claim brought. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc*., 528 U.S. 167, 185 (2000). Plan participants are not assignees of the Plan's legal claims, they do not have standing to pursue Plan-wide relief merely because of their statutory cause of action, and they must have a concrete stake—at least a "penny more" in potential monetary recovery to their own personal benefits—to maintain ERISA fiduciary-breach claims. *Thole*, 140 S. Ct. at 1619-20.

---

[8] *See also Simon v. Ky. Welfare Rts. Org*., 426 U.S. 26, 40 n.20 (1976) ("Persons who wish to represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and purport to represent.'") (quoting *Warth v. Seldin*, 422 U.S. 490) (1975)); *Glass Dimensions, Inc. v. State St. Bank & Tr. Co*., 285 F.R.D. 169, 174 (D. Mass. 2012) ("In a class action lawsuit, as in any lawsuit, Article III standing is a 'threshold requirement,' and the representative plaintiff must demonstrate personal injury in fact to certify a class.") (citation omitted); *Plumbers' Union Loc. No. 12 Pension Fund v. Nomura Asset Acceptance Corp*., 632 F. 3d 762, 769 n.6 (1st Cir. 2011) (same).

Thus, courts have dismissed for lack of standing a plaintiff's fiduciary-breach claims involving a defined-contribution plan where, as here, the plaintiff has not suffered any harm with respect to the challenged fees. Mem. at 11-12 (collecting cases). This Court should do the same.

### B. Plaintiff's Case Law Does Not Compel a Different Result.

Plaintiff cites a handful of cases that are inconsequential to the Article III standing analysis. In both *Johnson v. PNC* and *Garthwait v. Eversource Energy Co.*, the plaintiffs alleged that all plan participants paid an identical, flat recordkeeping fee. *Johnson v. The PNC Financial Services, Grp.*, No. 2:20-CV-01493 (W.D. Pa. Mar. 31, 2022) ("$25 per head"); *Garthwait v. Eversource Energy, Co.*, 2021 WL 4441939, at * 7 (D. Conn. Sept. 28, 2021) ("these $45 fees are charged to all Plan participants, regardless of which investment options they select"). Not so here, and that distinction is critical. Plaintiff has *not* alleged that all plan participants paid the same "excessive" fees. The opposite. Unlike *PNC* and *Garthwait*, Plaintiff claims the actual recordkeeping fees incurred depend on the specific investments that each participant selected and whether they paid revenue sharing. *Supra* at 3-4. In *In re Omnicom ERISA Litigation*, the plaintiffs similarly alleged all participants paid the same fixed "excessive" fee, but the Court did not address standing in that context. 2021 WL 3292487, at *6-10. *Garcia v. Alticor*, *Inc.* is also distinguished because there, the defendants *conceded* the plaintiff "has standing to bring a claim based on excessive recordkeeping fees" and "may have been injured" by excessive fees, presumably because the plaintiff personally paid the allegedly excessive fees in that case. 2021 WL 5537520, at *3 (W.D. Mich. Aug. 19, 2021). That is not this case.[9]

Plaintiff's other cited cases are equally distinguishable. There, the courts did not examine a factual motion challenging whether the named plaintiff had Article III standing because they were *not injured at all*, as Defendants assert here. Rather, it was undisputed in those cases that the

---

[9] In *In re Mutual Funds Investment Litig.*, the Court addressed the redressability component of Article III standing when former employees who had already obtained full distribution of their vested benefits brought suit. 529 F.3d 207 (4th Cir. 2008). At issue was not whether the named plaintiffs suffered an injury-in-fact as a result of defendants' alleged conduct. It was undisputed that "[i]f the plaintiffs' allegations are true, they suffered injury in that their retirement accounts were worth less than they would have been absent the breach of duty. . . ." *Id*. at 216. Not so here.

named plaintiff had demonstrated *some* personal injury to their account based on the funds they personally invested or the fees they personally paid. None of Plaintiff's authority holds a plaintiff can circumvent a showing of *any* personal injury-in-fact because he is bringing a representative action. *See, e.g., In re Biogen, Inc.*, 2021 WL 3116331, at *4 ("the Court concludes that the named Plaintiffs have asserted an injury in fact, as they allege that they *personally paid* excessive fees in connection with *their own investments*") (emphasis added); *Parmer v. Land O'Lakes, Inc.,* 518 F.Supp. 3d 1293 (D. Minn. 2021) (plaintiffs invested in 3 of the challenged funds); *Khan v. PTC, Inc.,* 2021 WL 1550929, at *2 (D. Mass. Apr. 20, 2021) ("[plaintiffs] invested in Plan investments which are the *subject of this lawsuit*") (emphasis added); *Boley*, 498 F. Supp.3d at 720 ("The Employees seeking relief under ERISA must demonstrate injury to one's own plan account to have Article III standing"; "the Fiduciaries concede [plaintiffs] each invested in at least one of these allegedly imprudent [funds]" and "at least a portion of the excessive fees or lower returns affected their individual accounts"); *Mator*, 2021 WL 4523491, at *3 (plaintiffs invested in 2 of the 19 challenged funds).

Unlike Plaintiff's cited authority, the question, here, is not whether Plaintiff has to show he suffered injury from investing in every challenged investment. Rather, it is much more fundamental: as the Supreme Court stated in *Ramirez*, the question is simply "What's it to you?" 141 S. Ct. at 2203. That answer here is: nothing.[10] Plaintiff has no Article III injury-in-fact.

## III. CONCLUSION

For all of these reasons, and those set forth in Defendants' opening memorandum, Defendants respectfully request that this Court dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1) for lack of Article III standing.

---

[10] Plaintiff cites a handful of cases on page 4 that address the merits of the duty of prudence. In each case, the courts denied the defendants' motion by applying the Rule 12(b)(6) standard, and it was undisputed that the named plaintiffs personally suffered the injuries in the alleged complaint. As such, the courts were not called upon to make the "threshold" determination of the "propriety of judicial intervention" required by Article III when a plaintiff's injury-in-fact standing as been put in issue. These cases have no bearing on Defendants' 12(b)(1) Motion.

/s/ *Keri L. Engelman*
Keri L. Engelman, Bar No. 704360
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
Telephone: (617) 341-7828
Facsimile: (617) 341-7701
keri.engelman@morganlewis.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

       I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on April 20, 2022.

                                                /s/ *Keri L. Engelman*
                                                Keri L. Engelman